UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KATTIE DEDLOFF,                        )
                                       )
            Plaintiff,                 )
                                       )
     v.                                )        Case No. 4:22-cv-01340-AGF
                                       )
WHOLE FOODS MARKET GROUP,              )
INC.,                                  )
                                       )
            Defendant.                 )

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Whole Foods Market Group, Inc.'s

("Whole Foods") motion to dismiss for failure to state a claim upon which relief can be

granted pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 8.  This matter is fully briefed and

ready for disposition.  For the reasons discussed below, the Court will grant Whole

Foods' motion.

**Background**

**A.     Procedural History**

Plaintiff first filed this purported class action on behalf of herself and others

similarly situated in the Circuit Court of St. Charles County, Missouri on November 4,

2022.  ECF No. 6.  Whole Foods timely removed the action to this court based on

diversity jurisdiction under 28 U.S.C. § 1441(b).  ECF No. 1.  After removal, Whole

Foods filed its motion to dismiss and memorandum of law in support.  ECF Nos. 8, 9.

Plaintiff filed a response in opposition.  ECF No. 20.  Whole Foods filed a reply (ECF

1

No. 21) and has also filed a notice of supplemental authority, which provides recent orders from the Eastern District of Missouri dismissing similar cases for failure to state a claim (ECF No. 22).  On Whole Foods' unopposed motion, the Court previously took judicial notice of the organic Long Grain & Wild Rice – Rice Pilaf ("365 Pilaf") packaging and will consider it in deciding the motion to dismiss.  ECF No. 15; *see also Enervations, Inc. v. Minn. Mining and Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) ("Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading.") (citation and internal quotation marks omitted).

### B.      Plaintiff's Petition

Whole Foods manufactures, labels, markets, and sells 365 Pilaf under its 365 private label brand.  ECF No. 6.  Whole Foods sells the 365 Pilaf in a box measuring, in inches, 6.75 by 4.25 by 1.5.  Each box of 365 Pilaf includes a packet of rice and a packet of seasoning.  The 365 Pilaf box includes several statements regarding the amount of its contents: (1) the front of the box lists the net weight at 6 ounces (or 170 grams); (2) the back of the box says that it contains about 3 servings per container, which is equivalent to 2 ounces (or 56 grams) of dry rice; and (3) the side panel's preparation instructions twice state that the box "makes about 2 3/4 cups" of pilaf when prepared according to the box's preparation instructions.  ECF No. 10-1.  Plaintiff alleges that she purchased the product on at least one occasion in Missouri for her personal use.  She also alleges that she relied on the information on the 365 Pilaf's packaging and various Whole Foods marketing materials unrelated to this particular product to make her purchase.

2

Plaintiff alleges that when she opened the 365 Pilaf box to prepare its contents, she was disappointed to find it was only 48% filled with rice.  Plaintiff alleges additional disappointment because she believed Whole Foods was an environmentally conscious organization committed to reducing excess packaging materials across its stores and products, and she feels like the 365 Pilaf has more packaging than is necessary.  She alleges that the 365 Pilaf is sold at a premium price compared to other similar products and that Whole Foods is only able to charge this premium because of its allegedly misleading packaging.  ECF No. 6.

Plaintiff further alleges that she and other disappointed purchasers of 365 Pilaf were harmed by 365 Pilaf's allegedly deceptive packaging.  She seeks certification for two classes: (1) "[a]ll persons in the State of Missouri who purchased the [365 Pilaf] during the statutes of limitations for each cause of action alleged," called the Missouri Class; and (2) "[a]ll persons in the States of Missouri, Illinois,[1] Maryland, Hawaii, New York, Washington D.C., Rhode Island, Vermont, Washington, and Connecticut," called the Consumer Fraud Multi-State Class.  Plaintiff does not cite to any specific consumer fraud statutes of the states included in the proposed Multi-State Class, but instead alleges that "[t]he Consumer Fraud Acts of the States in the . . . Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or

---

[1]       As Whole Foods notes, these same allegations and claims were brought by an Illinois consumer, who was represented by one of Plaintiff's attorneys, and the Northern District of Illinois dismissed the case, finding reasonable consumers were neither deceived nor misled by the 365 Pilaf's packaging. *Jacobs v. Whole Foods Mkt. Grp.*, 621 F. Supp. 3d 894 (N.D. Ill. 2022).

3

deceptive business practices in the conduct of commerce." *Id.* at ¶ 123.

Plaintiff's Petition raises six Counts: (1) violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.005–315; (2) violation of state consumer fraud acts in all states covered by the Multi-State Class; (3) breaches of express warranty, implied warranty of merchantability/fitness for a particular purpose, and violations of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301–12; (4) negligent misrepresentation; (5) fraud; and (6) unjust enrichment.

## Legal Standard

A party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to give "a short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  To meet this facial plausibility requirement, the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  When assessing the motion to dismiss, the Court must make all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009)).  The Court must also "liberally construe a complaint in favor of the plaintiff." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).

4

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that merely pleads 'labels and conclusions' or a 'formulaic recitation' of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817–18 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). While the Court must accept all factual allegations in the complaint as true, it is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (citation omitted); *Iqbal*, 556 U.S. at 677–78.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. The Court must therefore determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id.* This "context-specific" task requires the Court to "draw on its judicial experience and common sense." *Id.* at 679, 682.

## Discussion

### A.    MMPA Claim

Plaintiff's chief claim is premised on Whole Foods' alleged violations of the MMPA. The MMPA gives consumers a private right of action to recover damages from product sellers:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person or a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the

5

county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages.

Mo. Rev. Stat. § 407.025.1(1).  Section 407.020 prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade. . . ."  For Plaintiff to state a claim under the MMPA, she must show that she "(1) purchased merchandise from [Whole Foods]; (2) for personal, family or household purposes; and (3) suffered an ascertainable loss of money or property (4) as a result of an act declared unlawful under [§ 407.020]." *Tucker v. General Motors LLC*, 58 F.4th 392, 397 (8th Cir. 2023) (quoting *Vitello v. Natrol, LLC*, 50 F.4th 689, 693 (8th Cir. 2022)).

Whole Foods argues that Plaintiff's MMPA claim should be dismissed because Plaintiff fails to allege deception or ascertainable loss.  ECF No. 9 at 7–13.  While the issue of the MMPA's 2020 amendments was not raised in the parties' briefing, Whole Foods supplemented its motion to dismiss with two recent decisions in the Eastern District that applied the MMPA's 2020 amendments to cases with allegations similar to those here.  ECF No. 22; *Bell v. Annie's, Inc.*, No. 4:22-cv-1367-MTS, 2023 WL 3568623, at *3–6 (E.D. Mo. May 18, 2023); *Abbott v. Golden Grain Co.*, No. 4:22-cv-1240-SRC, 2023 WL 3975107, at *4–8 (E.D. Mo. June 13, 2023).  The Court held in *Bell* that the 2020 MMPA amendments add elements that a plaintiff must plead and prove. 2023 WL 3568623, at *3.  The Court in *Abbott*, considering a motion to dismiss on nearly identical MMPA allegations against a producer of a different rice pilaf product,

6

adopted the reasoning and analysis in *Bell*.[2]

The Court will first take up whether Plaintiff has failed to allege deception and ascertainable loss, as these issues were briefed by the parties.

### 1.    **Plaintiff Fails to Plead Deception or Ascertainable Loss**.

"The ascertainable loss element incorporates Missouri's 'benefit of the bargain' common law fraud remedy." *Goldsmith v. Lee Enters., Inc.*, 57 F.4th 608, 615 (8th Cir. 2023) (citing *Vitello*, 50 F.4th at 693). "The benefit of the bargain is 'the difference between the value of the product as represented and the actual value of the product as received.'" *Goldsmith*, 57 F.4th at 615 (quoting *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014)). Under this long-standing rule, "[t]he proper measure of damages . . . is the difference between the actual value of the property at the time of the sale and what its value would have been if the representation had been true. . . ." *Kendrick v. Ryus*, 123 S.W. 937, 939 (Mo. 1909) (citation omitted).

To prove ascertainable loss, Plaintiff must show that Whole Foods represented the 365 Pilaf in a way that made it appear to have more value than it actually did. This requires Plaintiff to show some discrepancy between Whole Foods' representation and the actual product.

Plaintiff alleges that she purchased 365 Pilaf based on the information contained

---

[2]     Neither party has briefed, nor have they requested an opportunity to brief, the issues regarding the 2020 amendments to the MMPA raised by the *Bell* and *Abbott* decisions. The Court will nevertheless address the MMPA's 2020 amendments and reasoning in *Bell* and *Abbott* as it relates to Plaintiff's MMPA claims. The Court notes that Plaintiff's attorney herein is listed as counsel of record in both of these cases.

on the box and in Whole Foods' general marketing materials.  She further alleges that the 365 Pilaf's value "was materially less than its value as represented by Defendant," that Whole Foods sells the 365 Pilaf "at higher prices than it would have in the absence of this misconduct," and that the 365 Pilaf "is sold at a premium price, approximately $2.99 . . . ."  ECF No. 6 at ¶¶ 65–67, 98.

Plaintiff heavily relies on *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308 (Mo. Ct. App. 2016), in her opposition.  In *Murphy* the Missouri Court of Appeals found that the plaintiff adequately alleged the ascertainable loss element of an MMPA claim by alleging that the defendant falsely labeled its product "all natural" when it contained an allegedly artificial ingredient.  The plaintiff alleged that "[b]y affixing such a label to the packaging of the Mix, Defendant is able to entice consumers like Plaintiff to pay a premium for [the supposed] 'all natural' products."  *Id.* at 313–14.  The Missouri Court of Appeals deemed these allegations sufficient to survive a motion to dismiss.  The defendant in *Murphy* argued that the plaintiff failed to allege a deceptive practice, but the court rejected this argument, finding that "[t]he parties should have been allowed to proceed with discovery and allow these fact questions to be resolved by a motion for summary judgment, if appropriate, or by a jury, not by a motion to dismiss."  *Id.* at 312 (citation omitted).

Extending *Murphy* to cases of allegedly underfilled containers, some federal district courts have decided not to dismiss MMPA claims supported by relatively sparse allegations of loss and deception.  For example, in *Hawkins v. Nestle U.S.A. Inc.*, the court held:

8

> Plaintiff's allegations of ascertainable loss are analogous to those held
> sufficient in *Murphy*.  Plaintiff alleged that the boxes were opaque and that
> the size of the boxes led her to believe there was more candy in them than
> they actually contained.  She alleged that the value of the products she
> purchased was less than the value of the products as represented by [the]
> size of the boxes.  She alleged that product purchasing decisions are heavily
> dependent on the packaging, and on the package dimensions in particular,
> and that consumers tend to choose a larger package over a smaller one,
> thinking it is a better value.  Plaintiff has sufficiently alleged ascertainable
> loss for purposes of withstanding the motion to dismiss and the alleged loss
> was the result of the packaging.

*Hawkins*, 309 F. Supp. 3d 696, 706 (E.D. Mo. 2018); *see also White v. Just Born, Inc.*,

No. 2:17-cv-4025, 2017 WL 3130333, at *9 (W.D. Mo. July 21, 2017) (employing the

same reasoning); *Bratton v. Hershey Co.*, No. 2:16-cv-4322, 2017 WL 2126864, at *8

(W.D. Mo. May 16, 2017) (same).

These three cases, all of which involved allegedly deceptive packaging of candy

products, also rejected arguments that the plaintiffs failed to adequately allege

deceptiveness.  Citing *Murphy*, they held that the deceptiveness of a seller's packaging

"is a question of fact."  *Hawkins*, 309 F. Supp. 3d at 705; *White*, 2017 WL 3130333, at

*4; *Bratton*, 2017 WL 2126864, at *4.

Plaintiff's reliance on *Murphy* and its progeny is misplaced.  The alleged

deception in *Murphy* was premised on the labeling of the product as "all natural" while

the ingredients list allegedly contained artificial ingredients.  Here, there is no similar

discrepancy between a representation on the 365 Pilaf box and its ingredients list,

undermining any comparison between this case and the facts in *Murphy*.  To the contrary,

all representations as to quantity on the box are both clear and correct.

*Hawkins*, *White*, and *Bratton* all involved opaque boxes of ready-to-eats candies

that were allegedly underfilled.  Here, the rice and seasoning contained in the 365 Pilaf package is not ready-to-eat and instead requires preparation by cooking its contents in water and olive oil.  Whole Foods recognizes this and therefore includes preparation instructions on the side panel of the 365 Pilaf box.  These instructions twice advise consumers that the box's contents, when prepared, yield approximately 2 and 3/4 cups of rice pilaf.  ECF No. 10-1.  Unlike a purchaser of ready-to-eat candies, a consumer purchasing the 365 Pilaf knows that preparation of its contents is required before consumption and cannot rely on the size of the box as the sole indication of the amount of its contents.  *See Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1145 (S.D. Cal. 2021) (recognizing a reasonable consumer could not be deceived by size of pancake manufacturer's box to extent packaging provided information about final product output).  As such, comparisons between the facts in this case and those in *Hawkins*, *White*, and *Bratton* are unsuccessful.  Further, these cases were all decided before the 2020 amendments to the MMPA.  As discussed below, the amendments added reasonable reliance requirements for MMPA claims that were not previously a part of the statute.

Taking Plaintiff's allegations as true and analyzing the case law she cites for support, Plaintiff has not adequately alleged deception or ascertainable loss.  Plaintiff has failed to show that the 365 Pilaf packaging makes a representation that it is something other than it is, i.e., a box that includes 6 ounces of rice and seasoning that, when prepared, yields approximately 2 and 3/4 cups of rice pilaf.  Plaintiff received what she bargained for.  As such, Plaintiff fails to state a claim under the MMPA.

10

### 2. Plaintiff Also Fails to Plead Elements Required by the Amended MMPA.

In 2020, the Missouri legislature significantly amended the MMPA.  The 2020 amendments to § 407.025.1(2) added three elements that "[a] person seeking to recover damages shall establish": "(1) that the person acted as a reasonable consumer would in light of all circumstances; (2) that the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages; (3) and that individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty." *Abbott*, 2023 WL 3975107, at *4 (quoting Mo. Rev. Stat. § 407.025.1(2)). The 2020 amendments also empower courts to dismiss as a matter of law cases "where the claim fails to show a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer."  Mo. Rev. Stat. § 407.025.1(2).

While Plaintiff does not directly address the post-amendment elements under § 407.025.1(2), she offers several arguments for why she acted reasonably and why the 365 Pilaf package would cause a reasonable consumer to enter into a transaction that would result in damages.  Plaintiff essentially alleges that average consumers would not read the net weight disclosure, the serving size, or the preparation instructions on the 365 Pilaf package.  *See* ECF No. 6 at ¶¶ 2–5 (alleging that "[c]onsumers purchasing everyday items such as low-cost groceries are likely to exhibit a low degree of care"; that "[t]he average consumer spends 13 seconds making an in-store purchase decision"; that "consumers choose the larger box, thinking it is a better value"; and that "approximately

80 percent of consumers do not look at label information, especially net weight and servings.").  But a reasonable consumer would notice if a package weighed half as much as she expected and would further investigate the reason for the discrepancy between the product's size and its weight by reading the packaging.  *See Abbott*, 2023 WL 3975107 at *7 (citing *Bell*, 2023 WL 3568623, *4–5 ("[T]he Court concludes that the package's repeated statements [regarding the net weight and amount of its contents] was more than enough to clear up any possible confusion of a reasonable consumer")).

Plaintiff cites *Webb v. Dr Pepper Snapple Grp., Inc.*, No. 4:17-624-cv, 2018 WL 1955422, at *3 (W.D. Mo. Apr. 25, 2018) for the proposition that the law does not make consumers responsible for determining whether the size of a box is inconsistent with the box's net weight disclosure.  ECF No. 20 at 4.  But this contention does not follow from the conclusions in *Webb*.  In *Webb*, the issue was whether the plaintiff's interpretation of the product's representation that it was "Made From Real Ginger" was reasonable given the lack of ginger on the product's ingredient list.  The court rejected the argument that consumers are responsible for evaluating whether information included on the package label is inconsistent with other information on the label.  *Webb*, 2018 WL 1955422, at *3.

The facts in *Webb* are not comparable to this case.  Here, Whole Foods did not make any inconsistent or misleading statements on its box.  Instead, Whole Foods includes multiple, consistent notices of the amount of product contained in the 365 Pilaf package, and Plaintiff does not dispute that these statements are accurate.

Plaintiff further argues that a narrow focus on two aspects of the labeling, net weight and preparation instructions, does not serve the purpose of the MMPA.  ECF No.

12

20 at 5 (quoting *Hawkins*, 309 F. Supp. 3d at 705 (holding that the MMPA "is both written and construed broadly to serve its purpose of consumer protection")). *Hawkins* pre-dates the MMPA's 2020 amendments, and the court in *Hawkins* based its decision in part on the fact that reliance on the unlawful practice was not then required. 309 F. Supp. 3d at 701. "The post-amendment statutory requirement that consumers demonstrate that they acted reasonably defines, or perhaps better said confines, the purpose and scope of the MMPA." *Abbott*, 2023 WL 3975107, at *7. To ignore the MMPA requirement that the plaintiff act reasonably would go against the plain text of the statute and be contrary to its purpose. Moreover, Plaintiff's argument ignores that the 365 Pilaf box expressly advises how much finished product it yields.

Taking Plaintiff's allegations as true, Plaintiff fails to adequately plead the three post-amendment elements from § 407.025.1(2). Applying these elements here, a reasonable consumer who reads the 365 Pilaf package would understand that it contains 6 ounces of rice and seasoning that would result in 2 and 3/4 cups of product when prepared per the box's instructions. *See Bell*, 2023 WL 3568623, at *4 (finding that "reasonable consumers do review product labels" and "Missouri law recognizes that reasonable consumers do review product labels") (citations omitted); *see also Abbott*, 2023 WL 3975107, at *6. Given this disclosure, any reasonable consumer would not have relied on the size of the 365 Pilaf packaging to enter into the transaction. *See Jacobs v. Whole Foods Mkt. Grp.*, 621 F. Supp. 3d 894, 898 (N.D. Ill. 2022) ("[A]ny reasonable consumer surely knows that rice pilaf sold in a box must be cooked in water or another liquid prior to consumption, and understands further that the cooking process

13

will cause the rice to expand in volume.  In other words, a reasonable consumer expects the size of the box to bear only a loose relationship to the amount of cooked product its contents will yield.")

Plaintiff has also failed to establish "[i]ndividual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty."  Mo. Rev. Stat. § 407.025.1(2).  Plaintiff alleges that Whole Foods sells the 365 Pilaf at a higher price than it would have if its packaging were not deceptive. But Plaintiff got exactly what she bargained for—a 6 ounce package of rice pilaf—and she cannot plausibly plead otherwise.  Thus, in addition to her failure to allege deception and ascertainable loss, Plaintiff's failure to allege the added elements of the amended MMPA also requires dismissal of her claim.

**B.    Breaches of Warranty**

Plaintiff's second count raises several claims for breaches of warranty, which Plaintiff styles as "Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*"  ECF No. 6 at 16.  Plaintiff has failed to state a claim under each warranty theory.

Under Missouri law, an express warranty is created by an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain" and warrants that "the goods shall conform to the affirmation or promise."  Mo. Rev. Stat. § 400.2-313.  Plaintiff argues that the size of the 365 Pilaf box was an affirmation of fact or promise that there would be an amount of rice pilaf that had

14

a reasonable relationship to the packaging.  ECF No. 20 at 9; *see also* ECF No. 6 at ¶¶ 126, 129–131.

The Court does not agree that the size of the 365 Pilaf box acts as an express warranty.  *See Bell*, 2023 WL 3568623, at *7 (holding the same) (citing the definition of express in Black's Law Dictionary (11th ed. 2019) ("Clearly and unmistakably communicated; stated with directness and clarity.")).  The box expressly states the amount of its contents, and Plaintiff alleges that she relied on these representations when she purchased the product.  The box's size cannot be interpreted as creating a warranty that it contains more than what it expressly claims to contain.

Plaintiff's implied warranty claim is similarly flawed.  Under Missouri law, a warranty that the goods are "merchantable" is "implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  Mo. Rev. Stat. § 400.2-314.  To be "merchantable," goods must, among other things, "pass without objection in the trade under the contract description."  *Id.*  Plaintiff alleges that the 365 Pilaf could not do so because it is "marketed as if it contained an amount of rice that had a reasonable relationship to the packaging in which it was presented."  ECF No. 6 at ¶ 138; ECF No. 20 at 10.  But apart from the box's dimensions, Plaintiff raises no allegations that plausibly allege that the 365 Pilaf was marketed in a way suggesting it contained more rice pilaf than it actually contained.  Nor does Plaintiff allege that the 365 Pilaf was unmerchantable.  The package states the exact amount of its contents and the anticipated amount of prepared pilaf consumers would receive.  Plaintiff has therefore failed to sufficiently allege breach of implied warranty of merchantability.

15

The Magnuson-Moss Warranty Act "grants the holder of a warranty a federal cause of action for a breach of warranty under the applicable state law." *Hays v. Nissan N. Am. Inc.*, 297 F. Supp. 3d 958, 962 (W.D. Mo. 2017) (citing *Sipe v. Workhorse Custom Chassis, LLC*, 572 F.3d 525, 530 (8th Cir. 2009)). Plaintiff has failed to state a claim for a breach of warranty under Missouri law, and therefore the Court will dismiss Plaintiff's claim under the Magnuson-Moss Warranty Act.[3] *See Bell*, 2023 WL 3568623, at *8 (dismissing Magnuson-Moss Warranty Act claim because plaintiff had not adequately pleaded a cause of action for breach of warranty under Missouri law) (citing *Klausner v. Annie's, Inc.*, 581 F. Supp. 3d 538, 551 (S.D.N.Y. 2022) and *Vogt v. K&B Auto Sales, LLC*, 4:22-cv-385, 2022 WL 4103838, at *4–5 (E.D. Mo. Sept. 8, 2022)).

## C.     Negligent Misrepresentation

Missouri courts have adopted the tort of negligent misrepresentation as defined in the Restatement (Second) of Torts § 552 (1977). *See, e.g., AAA Excavation, Inc. v. Francis Const., Inc.*, 678 S.W.2d 889, 893 (Mo. Ct. App. 1984). Whole Foods argues that Plaintiff's claim for negligent misrepresentation fails because of Missouri's economic loss doctrine. ECF No. 9 at 16–17. The economic loss doctrine bars relief in negligence claims for purely economic damages. *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 198 (8th Cir. 1995). Missouri recognizes few exceptions

---

[3]     Because the Court finds that Plaintiff has failed to adequately allege any breach of warranty claims against Whole Foods, it need not address the parties' arguments regarding the sufficiency of Plaintiff's pre-suit notice to Whole Foods required by the Uniform Commercial Code as adopted by the Missouri Legislature. Mo. Rev. Stat. § 400.2-607(3)(a).

to the economic loss doctrine, including cases involving a fiduciary relationship, negligence in providing professional services, and when the defendant has breached a public duty. *Dannix Painting, LLC v. Sherwin-Williams Co.*, No. 4:12-cv-1640, 2012 WL 6013217 (E.D. Mo. Dec. 3, 2012). Plaintiff argues that Whole Foods has "special knowledge and experience" as "a trusted company known for its high-quality products" that gives it a duty "outside of [a] contract" to provide non-deceptive information. ECF No. 20 at 11. Plaintiff's unexplained reliance on *B.L. Jet Sales, Inc. v. Alton Packaging Corp.*, 724 S.W.2d 669, 672 (Mo. Ct. App. 1987) is unconvincing. That case involved claims of negligent misrepresentation in the sale of a jet. The Missouri Court of Appeals found that plaintiff had sufficiently pleaded a special relationship to avoid imposition of the economic loss doctrine, namely that the aircraft servicer had a public duty to accurately record information required by federal law. *Id.* No comparable public duty exists here. The Court will dismiss Plaintiff's negligent representation claim for her failure to assert a reason why the economic loss doctrine should not apply.

**D.   Fraud**

To raise a claim for fraudulent misrepresentation under Missouri law, Plaintiff must prove nine essential elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. 2007). As

17

explained above, Plaintiff received the benefit of her bargain.  Whole Foods represents its product accurately by explicitly disclosing the weight of its package's contents and the amount of finished product.  Plaintiff fails to plausibly allege that Whole Foods made false representations regarding the 365 Pilaf, therefore her allegations cannot support a fraud claim.

Plaintiff also fails to allege that Whole Foods acted with an intent to deceive.  *See* ECF No. 9 at 17.  Plaintiff argues that it can allege intent generally, citing Fed. R. Civ. P. 9(b), but Plaintiff does not point to any allegations that could fairly be read as alleging Whole Foods' intent to defraud.  *See* ECF No. 20 at 11–12.  Plaintiff's failure to allege intent also supports dismissal of her fraud claim.

### E.     Unjust Enrichment

"An unjust enrichment claim requires a showing that '(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances.'" *Binkley v. Am. Equity Mortg., Inc.*, 447 S.W.3d 194, 199 (Mo. 2014) (quoting *Hargis v. JLB Corp.*, 357 S.W.3d 574, 586 (Mo. 2011)).  Plaintiff cannot plausibly allege that Whole Foods retained the benefit under inequitable or unjust circumstances when she received exactly the amount of 365 Pilaf she bargained for.  *See In re Baycol Prods. Litig.*, 596 F.3d 884, 892 (8th Cir. 2010) (finding that because the plaintiff received the benefit of the bargain, his unjust enrichment claim failed).  The Court therefore will dismiss Plaintiff's unjust enrichment claim.

**Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Whole Foods' motion to dismiss is

**GRANTED,** and Plaintiff's claims against Whole Foods will be **DISMISSED without**

**prejudice** for failure to state a claim upon which relief can be granted.  ECF No. 8.  The

Court will enter a separate Order of Dismissal.

Dated this 23rd day of August, 2023.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE